**Case No. 22-1015**

IN THE
# United States Court of Appeals for the Sixth Circuit

PATRICIA MACINTOSH,

*Plaintiff/Appellee*,

v.

GRAND TRAVERSE COUNTY COMMISSIONER
RON CLOUS,

*Defendant/Appellant*.

On appeal from the United States District Court for the Western District of Michigan, Southern Division, District Court No. 21-cv-00309, Hon. Mag. Judge Phillip J. Green.

ROSATI, SCHULTZ, JOPPICH
& AMTSBUECHLER PC
MARCELYN A. STEPANSKI (P44302)
Attorneys for Defendant/Appellant
 County Commissioner Clous
27555 Executive Drive, Ste. 250
Farmington Hills, Michigan 48331-3550
(248) 489-4100/Fax: 1726
mstepanski@rsjalaw.com

**<u>BRIEF ON APPEAL OF DEFENDANT/APPELLANT
GRAND TRAVERSE COUNTY COMMISSIONER  RON CLOUS</u>**

**<u>* ORAL ARGUMENT REQUESTED *</u>**

# COUNSEL OF RECORD

Rosati Schultz Joppich
& Amtsbuechler PC
Marcelyn A. Stepanski (P44302)
Attorney for Defendant/Appellant
27555 Executive Drive, Ste. 250
Farmington Hills, MI  48331-3550
(248) 489-4100/Fax: 1726
mstepanski@rsjalaw.com

Blake K. Ringsmuth (P44013)
Thomas J. Wuori (P41096)
Ringsmuthwuori, PLLC
Attorneys for Plaintiff
102 W. Front Street, Ste. 401
Traverse City, MI 49684
(231) 929-4700
(231) 929-4702 (fax)
blake@rwinjurylaw.com
kate@rwinjurylaw.com

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to 6th Cir. R. 26.1(a), Defendant/Appellant is exempt from the requirement of filing a corporate affiliate/financial interest disclosure statement.

s/Marcelyn A. Stepanski (P44302)

Dated:  April 28, 2022

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES...................................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................... v

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ..... 1

STATEMENT OF ISSUES FOR REVIEW ......................................................... 2

STATEMENT OF THE CASE .............................................................................. 3

SUMMARY OF ARGUMENT ........................................................................... 10

STANDARD OF REVIEW ................................................................................. 11

ARGUMENT ....................................................................................................... 13

I.   Qualified Immunity Applies Where Defendant Did Not Violate Plaintiff's First Amendment Right, Nor Did Plaintiff Carry Her Burden To Demonstrate That Such Right Was Clearly Established In A Particularized Sense That Defendant Would Have Known That Momentarily Displaying A Weapon, During A Remote Zoom Meeting, After Being Asked To State His Position On Second Amendment Issues Constituted An Adverse Action That Would Deter A Person Of Ordinary Firmness From Engaging In Protected Conduct................................................... 13

   A.   Qualified Immunity Framework................................................................ 13

      1.   Defendant's conduct did not violate Plaintiff's First Amendment rights. ................................................................................................. 18

      2.   Plaintiff failed to carry her burden to demonstrate that Defendant violated a clearly established right when he displayed the weapon in response to Plaintiff's request that the Commissioners indicate their positions on the Second Amendment issues discussed during a remote Zoom meeting. ...... 28

CONCLUSION AND REQUESTED RELIEF .................................................... 36

CERTIFICATE OF CONFORMITY ................................................................... 38

# INDEX OF AUTHORITIES

**CASES**                                                                        **PAGE(S)**

*Anderson v Creighton,* 483 U.S. 635, 640 n. 2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) .................................................................................................. 13, 16

*Ashcroft v al-Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2080 (2011) ...........................14

*Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009) ...........................................................11

*Bailey v City of Ann Arbor*, 860 F3d 382, 387 (6th Cir. 2017) .................................12

*Baranski v Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F3d 433, 447 (6th Cir. 2006) ........................................................................16

*Barrett v Harrington*, 130 F3d 246 (6th Cir. 1997)..................................................28

*Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)...................11

*Bennett v Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 977 F3d 530, 544 (6th Cir. 2020), *cert. denied,* 141 S. Ct. 2795 (2021) .........................................24

*Bible Believers v Wayne County, Michigan*, 805 F3d 228, 243 (6th Cir. 2015) ......23

*Bloch v Ribar*, 156 F3d 673, 678 (6th Cir. 1998) ............................................. 19, 30

*Bond v Floyd*, 385 U.S. 116, 135-137 (1966)................................................... 23-24

*Brosseau v Haugen*, 543 U.S. 194, 198-200 (2004)...............................................16

*Chappell v City of Cleveland*, 585 F3d 901, 907 (6th Cir. 2009)....................... 16-17

*City of Escondido, Cal. v Emmons*, __ U.S. __; 139 S. Ct. 500, 503 (2019) .... 30-31

*Clark v Stone*, 998 F3d 287, 297-98 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 773, 211 L. Ed. 2d 483 (2022) ................................................................... 11, 18, 20, 34

*Cope v Heltsley*, 128 F3d 452, 459 (6th Cir. 1997) .................................................15

*Crawford v Tilley*, 15 F4d 752, 760 (6th Cir. 2021) .............................. 12-13, 17, 28

*District of Columbia v Wesby*, __U.S. __, 138 S. Ct. 577, 589 (2018) ...................12

*Dorsey v Barber*, 517 F3d 389, 394 (6th Cir. 2008)...................................................16

*Everson v Leis*, 556 F3d 484, 494 (6th Cir. 2009)......................................................14

*Goode v Berlanga*, 646 Fed Appx 427, 429-30 (6th Cir. 2016)...............................14

*Harlow v Fitzgerald,* 457 U.S. 800, 814 (1982) ........................................................15

*Heyne v Metro. Nashville Pub. Sch.*, 655 F3d 556, 564 (6th Cir. 2011) ..................12

*Johnson v Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).............................................12

*Jones v Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014).......24

*King v Zamiara*, 680 F3d 686, 695 (6th Cir. 2012) ...................................................26

*Kisela v Hughes*, 584 U.S. __; 138 S. Ct. 1148, 1153 (2018) ..................................30

*Lake County Estates, Inc. v Tahoe Regional Planning Agency*, 440 U.S. 391
 (1979) .........................................................................................................................23

*Mattox v City of Forest Park*, 183 F3d 515, 523 (6th Cir.1999) .................. 18-19, 21

*Mount Healthy City Sch. Dist. Bd. of Educ. v Doyle*, 429 U.S. 274, 287 (1977) ....20

*Mullenix v Luna*, 136 S. Ct. 305, 308 (2015).............................................................16

*Nieves v Bartlett*, 139 S. Ct. 1715, 1721-22 (2019)...................................................34

*Occupy Nashville v Haslam*, 769 F3d 434 (6th Cir. 2014)........................................31

*O'Connor v Cronkhite*, No. 1:20-CV-210, 2022 WL 765486, at *6 (WD Mich, 2022)
 .....................................................................................................................................25

*Papasan v Allain*, 478 U.S. 265, 286 (1986) ............................................................11

*Pearson v Callahan*, 555 U.S. 223, 231-232 (2009) ........................................ *passim*

*Plumhoff v Rickard,* 134 S.Ct. 2012 (2014)................................................. 13, 17, 30

*Reichle v Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088 (2012) ....................... 15, 33

*Saucier v Katz*, 533 US 194, 202 (2001) ..................................................................15

*Smith v Campbell*, 250 F3d 1032, 1037 (6th Cir. 2001).............................................20

*Spithaler v Smith*, 803 Fed Appx 826, 829 (6th Cir. 2020) ......................................15

*Thaddeus-X v Blatter*, 175 F3d 378, 388 (6th Cir. 1999) ............................. 18-20, 22

*The Baltimore Sun Co. v Ehrlich*, 437 F3d 410, 416 (4th Cir. 2006).......... 19, 22, 24

*Vakilian v Shaw*, 335 F3d 509, 516 (6th Cir. 2003) ................................................14

*White v Pauly*, 137 S. Ct. 548 (2017) ................................................................ 17, 30

*Wood v Moss*, 572 U.S. 744; 134 S. Ct. 2056 (2014)..............................................32

*Wurzelbacher v Jones-Kelley,* 675 F3d 580, 584 (6th Cir. 2012) ..................... 19, 26

## **STATUTES**

28 USC §1291 ........................................................................................................1

28 USC §1294 ........................................................................................................1

28 USC §1331 ........................................................................................................1

42 USC §1983 ........................................................................................................1

## **RULES**

Rule 12(b)(6)........................................................................................................11

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Although Defendant/Appellant's brief addresses the issues and applicable law warranting reversal, the decisionmaking process will be significantly aided by oral argument where it would provide the parties an opportunity to highlight important matters for the Court and explore any issues the panel would like to discuss before rendering a decision. As such, Defendant/Appellant respectfully requests that he be granted oral argument.

# STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

**I.**     ***Subject Matter Jurisdiction***:     On April 12, 2021, Plaintiff filed a Complaint in the United States District Court for the Western District of Michigan pursuant to 42 USC §1983 against the Grand Traverse County Commissioner Ron Clous in his individual capacity and Grand Traverse County. (R.1, Complaint, PG ID 1.) Plaintiff asserted that she was retaliated against in violation of the First Amendment for engaging in protected speech. The district court was vested with subject matter jurisdiction pursuant to 28 USC §1331, governing federal questions.

**II.**     ***Appellate Jurisdiction***:     By Order dated December 7, 2021, the district court denied Defendants' respective Motions to Dismiss, including the within Defendant's motion premised upon qualified immunity. (R.39, Order, PG ID 421-422.) On January 4, 2022, Defendant Clous filed a Notice of Appeal. (R.44, Notice, PG ID 484-485.) Jurisdiction is vested in this Honorable Court pursuant to 28 USC §§1291 and 1294.

# STATEMENT OF ISSUES FOR REVIEW

I.     **DOES QUALIFIED IMMUNITY APPLY WHERE DEFENDANT DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHT, NOR DID SHE CARRY HER BURDEN TO DEMONSTRATE THAT SUCH RIGHT WAS CLEARLY ESTABLISHED IN A PARTICULARIZED SENSE THAT DEFENDANT WOULD HAVE KNOWN THAT MOMENTARILY DISPLAYING A WEAPON, DURING A REMOTE ZOOM MEETING, AFTER BEING ASKED TO STATE HIS POSITION ON SECOND AMENDMENT ISSUES CONSTITUTED AN ADVERSE ACTION THAT WOULD DETER A PERSON OF ORDINARY FIRMNESS FROM ENGAGING IN PROTECTED CONDUCT?**

          Plaintiff/Appellee answers:     No
          Defendant/Appellant answers:   Yes
          The district court answered:     No

<u>**STATEMENT OF THE CASE**</u>

<u>**Introduction**</u>

On January 20, 2021, the Grand Traverse County Board of Commissioners held its regularly scheduled monthly meeting virtually via Zoom due to ongoing COVID-19 pandemic precautions. A number of issues were discussed at the meeting, including those surrounding Second Amendment rights and a resolution recognizing the County as a Second Amendment sanctuary. Plaintiff participated in the portion of the meeting dedicated to public comment. She challenged the Commissioners to express their positions on these issues. Defendant Clous, in the comfort of his own home, stepped out of view and then returned, momentarily displaying a firearm, expressing his position on the Second Amendment issues. Plaintiff claims that Defendants Grand Traverse County and Commissioner Ron Clous, particularly, retaliated against her during the meeting in violation of her First Amendment rights. She seeks monetary damages, as well as injunctive and declaratory relief. However, Plaintiff's Complaint is devoid of allegations sufficient to overcome Defendant's qualified immunity defense. Plaintiff cannot show she suffered an adverse action causing injury that was sufficient to chill a person ordinary firmness from engaging in protected speech. Moreover, she failed to carry her burden to demonstrate that her First Amendment rights were clearly established in a particularized sense, such that any official in Defendant's position would have

3

known that displaying a gun momentarily under the circumstances presented violated such rights. In addition, Defendant Clous's actions themselves are protected, and thus, cannot constitute a violation of Plaintiff's constitutional rights. For these reasons, fully detailed below, the denial of qualified immunity should be reversed.

**Factual Background**

This case primarily relates to a meeting of the Grand Traverse County Board of Commissioners on January 20, 2021. (R.1, Complaint, PG ID 5.) On that date, the Board of Commissioners met for their regularly scheduled January meeting. (R.16, Exhibit 1, 1/20/21/Meeting Agenda, PG ID 134.) Due to public health concerns related to the COVID-19 pandemic, the meeting was held remotely via Zoom and streamed and uploaded to YouTube, where it remains available. (*Id*., Exhibit 2, 1/20/21 Meeting Video.)[1] The Board's agenda detailed a wide variety of topics for the meeting that morning, including proposals regarding the County's logo, Board of Commissioners benefits, and a COVID-19 related pandemic resolution. (*Id*., Exhibit 1, PG ID 134.) The agenda also included multiple periods for public comment, and explicitly noted the County "encourage[d] remote participation." (*Id.)*

---

[1] Two meeting videos are pertinent. Both were filed below in the traditional manner at R.21, and copies are being supplied to this Court as well. This video also is linked at: https://www.youtube.com/watch?v=iEStGPdybmk&t=5297s.

The meeting began at approximately 8:00 a.m. with a quorum of Board members virtually present. (*Id.*, Exhibit 3, 1/20/21 Meeting Minutes, PG ID 140.) Defendant/Appellant, Commissioner Ron Clous, was among the "present" Board members, though it is undisputed that he was participating virtually and was physically located in his own home. (*Id.*, Exhibit 1, PG ID 8-10.) There is nothing in the meeting video or Plaintiff's pleadings to suggest anyone was in the room with the Defendant during this meeting, other than his dog. (*Id.*, Exhibit 2, generally.) Plaintiff most certainly was not physically present with Clous.

During the portion of the meeting allotted for public comment, Plaintiff had an opportunity to speak. (R.1, Complaint; Exhibit 2, at 1:21:11 to 1:24:25.) Plaintiff describes herself as a "regular contributor" at Grand Traverse County Board of Commissioner meetings. (R.1, ¶19, PG ID 5.) She was one of many citizens to speak that morning, with commenters raising a wide variety of national and local issues to the Board. (R.16, Exhibit 2, generally, from 0:12:57 to 1:55:19.) Plaintiff's comments similarly discussed a wide variety of topics, including the "Proud Boys," the insurrection at the United States Capitol, and a Second Amendment resolution (hereafter "Resolution 29-2020") passed the previous year by the Board during its March 4, 2020 meeting. (R.1; R.16, Exhibit 2, at 1:21:11 to 1:24:25; Exhibit 3, 1/20/21 Meeting Minutes, PG ID 141.) Resolution 29-2020 made Grand Traverse County a "Second Amendment sanctuary," reiterating the County's commitment to

protecting the Second Amendment rights of its citizens. (R.16, Exhibit 4, 3/4/20 Meeting Minutes and Resolution, PG ID 151-152, 163-164.)

At the January 20, 2021 meeting, Plaintiff's comments not only challenged Resolution 29-2020, but also specifically *requested* that the Board make its views on the Resolution, the "Proud Boys" group, and gun rights known to the public. (*Id.*, Exhibit 2, at 1:21:11 to 1:24:25.) In fact, Plaintiff pressed the Board to "make a statement to the community" about those issues and raised additional concerns regarding gun ownership in the County. (*Id.*, at 1:21:10 to 1:24:25.) Plaintiff's commentary that morning also specifically referenced the remarks of another citizen (Kate Dahlstrom) who spoke briefly before Plaintiff. (*Id.*, at 1:15:25 to 1:18:45.) Ms. Dahlstrom had referred to Resolution 29-2020 as "ill-advised," "much opposed," "disruptive," and asked the Commissioners to "vote to revoke this ill-advised gun sanctuary designation." (*Id.*, at 1:15:25 to 1:18:45, generally). She similarly spoke out about the group "Proud Boys," in relation to Resolution 29-2020. (*Id.*) Plaintiff's pleadings reiterated her position on these issues, including her disagreement with the Board's action during its March 4, 2020 meeting and its passage of Resolution 29-2020. (R.1, ¶10-12, PG ID 3-4.) In fact, Plaintiff's Complaint specifically raised concern regarding a person at the March 4, 2020 meeting who was "openly carrying a firearm."[2] (*Id.*)

---

[2] This person is not specifically identified in Plaintiff's Complaint or the

During Plaintiff's challenge to the Commissioners to provide their positions on the variety of Second Amendment issues raised, the meeting video shows Defendant Clous walked off screen before reappearing and momentarily displaying the side view of a firearm, symbolically expressing his response to Plaintiff's question regarding the Second Amendment issues. (R.16, Exhibit 2, at 1:23:56 to 1:24:14). As he did so, he appeared to chuckle to himself in jest. (*Id.*) The video depicts Clous sitting down and then setting the gun down off camera. (*Id.*) The entire interaction with the firearm on screen, which was one of 20 separate boxes on the Zoom feed, lasted six to seven seconds. (*Id.*) Defendant made no verbal remarks while doing so, nor during any part of Plaintiff's remarks. (*Id.*) His firearm was devoid of its clip where ammunition is stored and therefore was unloaded. It was never pointed at the camera, and his finger never touched or came near the trigger. (*Id.*) Outside of what appears to be brief laughter from fellow Grand Traverse County Commissioner Rob Hentschel, there were no immediate reactions to him or his firearm on the meeting video. (*Id.*) In fact, without missing a beat, Plaintiff continued her critical remarks of the Board and gun ownership until her allotted time expired and after Clous had set his firearm offscreen. (*Id.*)

In the days following the January 20th meeting, significant public interest

attached materials, though Plaintiff suggests they were a member of the public in attendance at the Board's meeting. (R.1, ¶10, at PG ID 3-4.)

arose regarding Defendant's actions during the meeting. (R.1, PG ID 8-10.) In light of these concerns, a special Board of Commissioners meeting was held on January 28, 2021. (R.1, ¶46-49, PG ID 9-10; R.16, Exhibit 5, 1/28/21 Meeting Agenda, PG ID 166; Exhibit 6, 1/28/21 Meeting Minutes, PG ID 169; Exhibit 7, 1/28/21 Meeting Video.) This meeting was also held remotely and was simultaneously streamed and uploaded to YouTube. (R.16, Exhibit 7.)[3] During the meeting, another commissioner introduced a resolution condemning the actions of Clous. (R.1, ¶46-49, PG ID 9-10; R.16, Exhibits 5-6, PG ID 166, 169.) Two periods of public comment were also held with 94 persons commenting in the first segment and 11 persons commenting in the second segment. (*Id.*, R.1, ¶46-49; R.16, Exhibit 6, PG ID 169-172; Exhibit 7, video.) As admitted by Plaintiff's Complaint, a variety of divergent views were voiced during the public comment by "approximately 100 people," including residents in support of and against the proposed resolution condemning Defendant's actions. (*Id.*)

On April 12, 2021, Plaintiff filed suit against Defendant and Grand Traverse County. (R.,1, PG ID 1.) Plaintiff's Complaint asserted that her First Amendment rights were violated during the January 20, 2021 meeting, and she requested

---

[3] A copy of this video was filed in the district court in the traditional manner and is being filed in this Court in the same manner. This video can be accessed via this link: https://www.youtube.com/watch?v=YR3QZqMnkaw.

compensatory and punitive damages along with injunctive and declaratory relief against Defendants. (*Id.*) Defendant Clous and the County filed separate Motions to Dismiss. (R.15-16, PG ID 90-173.) Plaintiff responded, and Defendant replied. (R.33, Corrected Response, PG ID 345-375; R.34, Reply, PG ID 380-416.) On August 13, 2021, with consent of the parties to dispositive jurisdiction by a Magistrate Judge, the Hon. Hala Y. Jarbou referred the case to Magistrate Judge Phillip J. Green. A hearing on the motions was conducted on December 7, 2021. The court rejected Defendant's arguments that pursuant to qualified immunity, Plaintiff failed to plead a constitutional violation nor did prior case law settle the question beyond debate such that a reasonable official in Commissioner Clous's position would have known that what he was doing violated clearly established constitutional rights, opting instead to rely on a general rule that the First Amendment protects speech criticizing government officials from retaliation, citing *Bloch v Ribar*, *infra*, as dispositive support. (R.43, motion hearing transcript, PG ID 450-459, 472-479.) Plaintiff advocated that the Court take the "10,000-foot view" and conclude that retaliation is constitutionally violative, as a general proposition. (*Id.*, PG ID 463-464.)

Defendant Clous now appeals. Where qualified immunity was improperly denied, that decision should be <u>reversed</u>.

# **SUMMARY OF ARGUMENT**

Qualified immunity was improperly denied where Plaintiff requested the Commissioners to express their positions on the Second Amendment issues. Defendant Clous, during a remote meeting from the comfort of his own home, momentarily displayed the sideview of a firearm, expressing his position on the Second Amendment issues. The gun was not loaded, it was not pointed at anyone, no threatening or other words were uttered, and Defendant chuckled to himself in jest as he briefly displayed it. Based on the circumstances of this case, Plaintiff cannot show that she suffered an adverse action causing injury that was sufficient to chill a person ordinary firmness from engaging in protected speech. Nor did she carry her burden to demonstrate that her First Amendment rights were clearly established in a particularized sense, such that any official in Defendant's position would have known that displaying a gun momentarily under the circumstances presented violated the First Amendment. The lack of clarity is even more compelling in this case where Defendant Clous's actions themselves are protected, and thus, cannot constitute a violation of Plaintiff's constitutional rights. For these reasons, fully detailed below, the denial of qualified immunity should be <u>reversed</u>.

## STANDARD OF REVIEW

A decision on a Rule 12(b)(6) motion to dismiss is reviewed *de novo*. *Clark v Stone*, 998 F3d 287, 297-98 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 773, 211 L. Ed. 2d 483 (2022). To survive a motion to dismiss, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.*, citing *Papasan v Allain*, 478 U.S. 265, 286 (1986). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009), citing *Twombly*, at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, cleaned up.

A reviewing court construes the complaint in the light most favorable to the nonmoving party, accepts the well-pled factual allegations as true, and determines whether the moving party is entitled to judgment as a matter of law. *Clark*, at 298. However, it need not accept as true the "plaintiff's legal conclusions or unwarranted factual inferences." *Id.* Furthermore, this court may take judicial notice of public records, and is not required to accept as true factual allegations that are contradicted

11

by those records. *Id.*, citing *Bailey v City of Ann Arbor*, 860 F3d 382, 387 (6th Cir. 2017).

To survive a 12(b)(6) motion based on qualified immunity, a plaintiff must have alleged facts that plausibly make out a claim that the defendant's conduct violated a constitutional right that was clearly established at the time, such that a reasonable official would have known that his conduct violated that right. *Johnson v Moseley*, 790 F.3d 649, 653 (6th Cir. 2015); *Heyne v Metro. Nashville Pub. Sch.*, 655 F3d 556, 564 (6th Cir. 2011). While the defendant must raise the defense, the plaintiff bears the burden of overcoming qualified immunity. *Crawford v Tilley*, 15 F4d 752, 760 (6th Cir. 2021) (motion to dismiss warranted based on qualified immunity). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* Government officials are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. *Id.*; *District of Columbia v Wesby*, __U.S. __, 138 S. Ct. 577, 589 (2018).

<u>**ARGUMENT**</u>

**I.** <u>**QUALIFIED IMMUNITY APPLIES WHERE DEFENDANT DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHT, NOR DID PLAINTIFF CARRY HER BURDEN TO DEMONSTRATE THAT SUCH RIGHT WAS CLEARLY ESTABLISHED IN A PARTICULARIZED SENSE THAT DEFENDANT WOULD HAVE KNOWN THAT MOMENTARILY DISPLAYING A WEAPON, DURING A REMOTE ZOOM MEETING, AFTER BEING ASKED TO STATE HIS POSITION ON SECOND AMENDMENT ISSUES CONSTITUTED AN ADVERSE ACTION THAT WOULD DETER A PERSON OF ORDINARY FIRMNESS FROM ENGAGING IN PROTECTED CONDUCT.**</u>

**A.** <u>**Qualified Immunity Framework**</u>

In *Plumhoff v Rickard,* 134 S.Ct. 2012 (2014), our Supreme Court reiterated that "qualified immunity is '*an immunity from suit rather than a mere defense to liability.*'" *Id*., at 2018-2019, emphasis added. It is 'both important and completely separate from the merits of the action, and cannot be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost.' *Id*., citations omitted. Indeed, because the "driving force" behind the qualified immunity doctrine is the "desire to ensure that 'insubstantial claims' against government officials will be resolved prior to discovery," immunity questions should be resolved at the earliest possible stage of litigation. *Pearson v Callahan*, 555 U.S. 223, 231-232 (2009), quoting *Anderson v Creighton,* 483 U.S. 635, 640 n. 2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal quotation marks and brackets omitted)); see also, *Crawford*, *supra* at 760. The

purpose of qualified immunity is to protect public officials from undue interference with their duties and from potentially disabling threats of liability. *Vakilian v Shaw*, 335 F3d 509, 516 (6th Cir. 2003). Because qualified immunity is an immunity from suit rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to proceed. *Pearson*, at 231.

In determining whether qualified immunity applies, our courts employ a two-part test and consider: **(1)** ***whether a constitutional right has been violated, and* (2)** ***whether that right was clearly established.*** *Everson v Leis*, 556 F3d 484, 494 (6th Cir. 2009). Courts may address these prongs in any order, and either one may be dispositive. *Pearson*, *supra* at 236. Courts have discretion to decide which of the "two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand," *Pearson,* at 236, however, they "should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case'" where the plaintiff cannot demonstrate that the right was clearly established in the circumstances presented. *Goode v Berlanga*, 646 Fed Appx 427, 429-30 (6th Cir. 2016), citing *Ashcroft v al-Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2080 (2011) (quoting *Pearson,* at 236-37).

The "clearly established" requirement reflects a careful balance between two conflicting concerns:

> In situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees.... At the same time, however, it cannot be disputed seriously that claims frequently run against the innocent as well as the guilty - at a cost not only to the defendant officials, but to society as a whole. These social costs include expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will "dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties."

*Harlow v Fitzgerald,* 457 U.S. 800, 814 (1982).

To hold a government official personally liable under the First Amendment, plaintiffs must show that the official violated their "clearly established" rights thereunder. *Reichle v Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088 (2012); *Spithaler v Smith*, 803 Fed Appx 826, 829 (6th Cir. 2020). A right is "clearly established" when "it would be clear to a reasonable [official] that his conduct was unlawful *in the situation that he confronted*." *Saucier v Katz*, 533 US 194, 202 (2001), emphasis added, overruled on other grounds by *Pearson*, *supra*. For qualified immunity to be surrendered, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Cope v Heltsley*, 128 F3d 452, 459 (6th Cir. 1997). According to the Supreme Court, "the contours of the right must be sufficiently clear that a

15

reasonable official would understand that what he is doing violates the right." *Anderson*, at 640; *Brosseau v Haugen*, 543 U.S. 194, 198-200 (2004). Our *courts* must determine whether the right has been recognized in a particularized, relevant sense. *Chappell v City of Cleveland*, 585 F3d 901, 907 (6th Cir. 2009), *Anderson*, *supra*. In other words, while a generalized right to be free from retaliation for critical speech or an arrest without probable cause is "clearly established," the Supreme Court requires a more particularized inquiry, probing whether it would be clear to a reasonable official "that his conduct was unlawful *in the situation he confronted*." *Saucier*, at 202, emphasis added; *Mullenix v Luna*, 136 S. Ct. 305, 308 (2015).

When conduct is within the 'hazy border' of a constitutional right, it cannot be said that a government officer violated a 'clearly established' right. *Baranski v Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F3d 433, 447 (6th Cir. 2006); *Brosseau*, *supra* at 198. Because "reasonable mistakes can be made as to the legal constraints on particular … conduct," qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Dorsey v Barber*, 517 F3d 389, 394 (6th Cir. 2008).

In *Pearson*, *supra*, our Supreme Court unanimously reiterated that "the protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id*., at 231. The Court advised that *qualified immunity*

16

*covers "mere mistakes in judgment, whether the mistake is one of fact or one of law."* *Id.*, emphasis added. "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau*, *supra* at 198. The ultimate question is "whether a reasonable [officer] ***could have believed*** the [challenged action] to be lawful, in light of clearly established law and the information [he] possessed." *Anderson*, at 641.

The *plaintiff* bears the burden of showing that defendants are not entitled to qualified immunity. *Crawford*, *supra* at 760; *Chappell*, *supra* at 907. The plaintiff must show both that a constitutional right was violated and the right was clearly established at the time of the violation. *Id.* "If the plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, she will have failed to carry her burden." *Id.*

In *Plumhoff*, *supra*, our Supreme Court stressed that "existing precedent must have placed the statutory or constitutional question confronted by the official *beyond debate.*" *Id.*, at 2023, emphasis added. In *White v Pauly*, 137 S. Ct. 548 (2017), the Supreme Court reversed a denial of qualified immunity because the lower court failed to identify a case where an officer under similar circumstances was held to have violated the alleged constitutional right. *Id.*, at 551-552. Importantly, the Court emphasized that "clearly established law" should not be defined "at a high level of

generality" but must be "particularized" to the facts of the case. ***Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."*** *Id*., emphasis added.

### 1. Defendant's conduct did not violate Plaintiff's First Amendment rights.

To assert a First Amendment retaliation claim, Plaintiff must establish that: (1) she engaged in constitutionally protected activity, (2) that the defendant took adverse action against her causing injury that would likely chill a person of ordinary firmness from engaging in the protected activity, and (3) that action was motivated at least in part by the protected speech. *Clark*, *supra* at 302-03. For purposes of the motion below, the first element was not disputed.

Unpacking the second element, this Court has held that whether an action is even "adverse" will depend on context. *Thaddeus-X v Blatter*, 175 F3d 378, 388 (6th Cir. 1999). Further, the alleged action must be sufficiently adverse to establish a First Amendment claim. *Mattox v City of Forest Park*, 183 F3d 515, 523 (6th Cir.1999). In *Mattox*, the plaintiff alleged First Amendment retaliation when a published report disclosed private information regarding a "traumatic childhood incident." In addressing this claim, the Court held that the disclosure was insufficiently adverse to establish First Amendment retaliation, despite the fact that the plaintiff alleged "ridicule, contempt, shame, and disgrace." *Id*., at 523. While not minimizing "any

embarrassment [the plaintiff] may have suffered," the disclosure did not rise to the same "level" as the disclosure in *Bloch v Ribar*, 156 F3d 673, 678 (6th Cir. 1998) which involved "humiliating details" regarding a rape. *Mattox*, *supra*.

Next, "the determination of whether government conduct has a chilling effect or an adverse impact is an objective one - we determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct *in light of the circumstances presented in the particular case.*" *The Baltimore Sun Co. v Ehrlich*, 437 F3d 410, 416 (4th Cir. 2006), emphasis added, citing *Thaddeus–X*, at 398 (tailoring adverse impact analysis to specific circumstances presented). Because the analysis of the adverse impact is objective, it can be resolved as a matter of law. *Baltimore Sun*, at 416. See also, *Mattox*, *supra* at 522.

Further, where alleged adverse action is "inconsequential," resulting in nothing more than a "de minimis injury," the claim is properly dismissed as a matter of law. *Wurzelbacher v Jones-Kelley,* 675 F3d 580, 584 (6th Cir. 2012). Otherwise, it "trivializes the First Amendment to allow plaintiffs to bring ... claims for *any* adverse action, no matter how minor." *Id.*, emphasis in original, cleaned up (several allegedly improper database searches under plaintiff's name conducted by defendant were insufficient to create a cause of action).

Lastly, as to the third element, a plaintiff must demonstrate that the exercise

of the protected right was a "substantial or motivating factor" in the alleged retaliatory conduct. *Clark*, *supra* at 302-304; *Smith v Campbell*, 250 F3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v Doyle*, 429 U.S. 274, 287 (1977); *Thaddeus–X*, *supra* at 399.

### a. <u>No adverse action</u>

Applying the above, Plaintiff's allegations fail to satisfy the second requirement: that an adverse action was taken causing injury that would chill a person of ordinary firmness from continuing to engage in protected speech. First, as noted above, whether conduct is even "adverse" depends on context. *Thaddeus-X*, at 388. Plaintiff did not allege that anyone prevented her from speaking at the meetings. Rather, she asserts that the momentary display of the weapon, *in response to her request* that the Commissioners clarify their positions *on the Second Amendment issues* being discussed, chilled her from speaking at subsequent meetings. In considering this context, Plaintiff specifically pressed the Commissioners to publicly express their positions on the resolution and other Second Amendment issues discussed, including the resolution that the County is a Second Amendment sanctuary. Defendant Clous, while in the informal comfort of his home during the Zoom meeting, momentarily displayed a sideview of the gun in a manner consistent with expressing "this is my position on these Second Amendment issues." (R.16, Exhibit 2, video, 1:24:08-1:24:14.) The gun was not loaded, not pointed at the

screen, no threatening words were uttered, the display occurred via a remote zoom meeting where *Plaintiff* pressed the Commissioners to advise of their positions on the issues, and Commissioner Clous chuckled to himself in jest as he momentarily displayed the gun while in the informal setting of his own home. (*Id.*) This conduct was not even "adverse" in the context presented. It was merely a symbolic answer to Plaintiff's request that the Commissioners advise of their positions on the Second Amendment issues raised at the meeting.

Even if the action could somehow be considered "adverse," it was not sufficiently so in order to state a retaliation claim under the circumstances. See e.g., *Mattox*, *supra* (published report disclosing private information regarding a traumatic childhood incident insufficient adverse action); *Wurzelbacher*, *supra* (judgment on the pleadings upheld where several alleged improper database searches under plaintiff's name insufficient).

Defendant does not argue that displaying a gun would be proper in other contexts. However, where Plaintiff pressed for the Commissioners' positions and the meeting was conducted remotely, his conduct symbolized his position and was not dangerous or threatening based on his remote location and the manner in which he displayed the gun.

### b. <u>No objective chilling effect</u>

Nor do Plaintiff's allegations demonstrate the requisite chilling effect.

Plaintiff's alleged *subjective* chilling is insufficient. As noted above, this determination is an objective one and considers whether a similarly situated person of ordinary firmness reasonably would be deterred from participating in Commission meetings *in light of the circumstances presented in this particular case. Baltimore Sun*, *supra* at 416, citing *Thaddeus–X*, at 398 (tailoring adverse impact analysis to specific circumstances presented). It is not as though Plaintiff was advocating for reduced pay for Commissioners and Defendant displayed a gun. Rather, the entire discussion centered around the Second Amendment, gun rights, and related issues making the display of the gun tailored to the circumstances presented. Further, as previously briefed, over 100 members of the public appeared and commented at the next meeting, supporting the conclusion that a reasonable person of ordinary firmness would not be – and was not – deterred by such conduct. (R.1, ¶46-49; R.16, Exhibits 5-7, PG ID 166, 169, video.) While this ordinary firmness standard does not require Herculean fortitude, not every claimed chilling effect is sufficient. *Baltimore Sun*, *supra* (newspaper and reporters failed to state a claim as a matter of law where government officers instructed public employees not to talk to reporters).

Even Plaintiff's alleged *subjective* chilling is refuted by the meeting video. Not only did Commissioner Clous never interfere with Plaintiff's allotted time for public comment, but the video demonstrates that without missing a beat, she continued with her comments and concluded unabated. (R.16, Exhibit 2, at 1:24:08

to 1:24:25.) This is not a situation where Plaintiff voiced shock, disgust, or fear of any kind. (*Id.*)  She simply continued with her remarks. (*Id.*)

### c.  <u>Defendant's protected expressive conduct</u>

Significantly, the Commissioner's expressive conduct was likewise protected. The First Amendment protects the speech of both members of the public and public officials. See *Bond v Floyd*, 385 U.S. 116, 135-137 (1966). As the Supreme Court has stated, "[t]he manifest function of First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Id.*, at 136. The First Amendment protects speech and expressive conduct by Defendant, as a legislative official, as much as it does speech and expressive conduct by Plaintiff as a private citizen. *Id.* This principle applies to officials with legislative functions in local levels of government. *Lake County Estates, Inc. v Tahoe Regional Planning Agency*, 440 U.S. 391, 403-4 (1979).

Plaintiff cannot infringe upon Defendant's rights by suing him for his expressions of opinion on public matters, even if she deems his opinion and means of expression "shocking and outrageous." (R.1, ¶39, PG ID 8.) In fact, this Circuit has observed that "the First Amendment offers sweeping protection that allows all manner of speech to enter the marketplace of ideas." *Bible Believers v Wayne County, Michigan*, 805 F3d 228, 243 (6th Cir. 2015). It applies to "loathsome and unpopular" speech with the same force as that which is celebrated and widely

accepted. *Id*. The protection would be unnecessary if it only served to safeguard the majority views. "In fact, it is the minority view, *including expressive behavior that is deemed distasteful and highly offensive* to the vast majority of people, that most often needs protection under the First Amendment." *Id*., emphasis added.

"Legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them and be better able to assess their qualifications for office." *Bond*, *supra* at 136. If Plaintiff is offended by Defendant's expressive conduct and underlying policy positions, she can seek redress at the ballot box. Otherwise, Plaintiff's lawsuit acts as a "heckler's veto." A "heckler's veto" involves burdening or punishing speech to avoid offending a group or risking conflict. *Bennett v Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 977 F3d 530, 544 (6th Cir. 2020), *cert. denied,* 141 S. Ct. 2795 (2021). Lawsuits have been recognized as an improper means of effecting a heckler's veto. *See, e.g.*, *Jones v Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014) (describing lawsuit against interactive computer service providers as "'heckler's veto' that would chill free speech").

The Court upheld protected speech by a government official in *Baltimore Sun*, *supra*, where the governor made comments that were protected by the First Amendment, just like the reporters' statements about which the governor was commenting. The Court observed that although the speech of both the governor and

24

reporter are protected, the governor's speech could still have given rise to a retaliation claim "if it concerned private information about the reporter or any individual or was "threatening, coercive, or intimidating *so as to intimate that punishment, sanction, or adverse regulatory action [would] imminently follow.*" *Id*, at 420. It did not. See also, *O'Connor v Cronkhite*, No. 1:20-CV-210, 2022 WL 765486, at *6 (WD Mich, 2022) (public official had his own First Amendment right to express his views on a matter of public concern which was not grounds for a First Amendment retaliation claim). The same is true here. While Plaintiff contends that the Commissioner's speech could be considered intimidating or threatening (an argument which, in context, is refuted by the video), it is nonetheless protected where it did not intimate that punishment, sanction, or adverse regulatory action would immediately follow. (Factoring in this additional consideration in the qualified immunity analysis, demonstrates the lack of clarity facing Defendant as discussed *infra*.)

Plaintiff's pleadings also took considerable issue with the presence of a person "openly carrying a firearm" at the Board's March 4, 2020 meeting, but also admit Plaintiff remained a "regular contributor" at Board meetings thereafter and clearly remained capable of making comments during the January 20, 2021 meeting at issue. (*Id.*) If a person physically present with a firearm was insufficient to dissuade Plaintiff from being a "regular contributor" at meetings, it defies reason that

25

Defendant's similar possession of a firearm during a *remote virtual meeting* would have been sufficient to dissuade her, especially where his firearm was unloaded and displayed for only a few seconds. (R.16, Exhibit 2, at 1:24:08-1:24:14.) Taken together, these facts demonstrate that a person of ordinary firmness would not have been dissuaded by Defendant's actions under these circumstances.

### d.  Lack of injury

As to the requisite injury, Plaintiff asked the question but did not get her answer in the format apparently desired. However, her upset, shock, or even disgust does not supplant the objective deterrent requirement or constitute an injury that is something more than de minimis or inconsequential. *Wurzelbacher*, *supra*.

### e.  Lack of causation

Dismissal was also warranted based on Plaintiff's failure to demonstrate the third requisite element where she could not plausibly show that the alleged adverse action was taken to deter her from engaging in public comment at Grand Traverse County Board meetings. Our Circuit has indicated that this causation element requires a plaintiff to show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *King v Zamiara*, 680 F3d 686, 695 (6th Cir. 2012), internal citations omitted.

While Clous brought out his firearm during Plaintiff's comments, it is apparent from the events on screen that his conduct promoted a particular political position, i.e. in support of Second Amendment and gun ownership rights, rather than as punishment for Plaintiff voicing her political opinion. (R.16, Exhibit, 21:24:08-1:24:14.) The firearm was symbolically displayed to advocate in favor of Second Amendment rights where Plaintiff *asked* the Commissioners to advise of their stance on various gun-related issues. There was no indication it was meant to dissuade Plaintiff's involvement in public meetings. (*Id.*) Defendant never uttered any threats toward Plaintiff or anyone else, pointed the firearm at the screen, or interfered with her commentary. (*Id.*) Plaintiff's allegations are insufficient to withstand the third element.

Under the circumstances presented, displaying a gun via Zoom in response to the Plaintiff's requests for the Commissioners to take a position on the Second Amendment issues being discussed did not violate the Plaintiff's First Amendment rights. For these reasons, Defendant's Motion to Dismiss should have been granted on the first prong of qualified immunity, warranting reversal.

**2.** **Plaintiff failed to carry her burden to demonstrate that Defendant violated a clearly established right when he displayed the weapon in response to Plaintiff's request that the Commissioners indicate their positions on the Second Amendment issues discussed during a remote Zoom meeting.**

As previously delineated, it is the *Plaintiff's* burden to demonstrate a constitutional violation and a clearly established right. *Crawford*, *supra* at 760. The second prong of qualified immunity defeats Plaintiff's claim where it was not clearly established in any particularized sense that merely displaying a gun in response to a request to take a position on Second Amendment issues would constitute a First Amendment violation, particularly where the meeting was being conducted remotely. Failing to particularize the right would all but render qualified immunity useless in First Amendment cases.

In denying immunity, the lower court primarily relied on two cases. In *Barrett v Harrington*, 130 F3d 246 (6th Cir. 1997), a disgruntled litigant alleged that a state judge who presided over litigation against him, falsely accused him to the media of stalking her in retaliation for his efforts in revealing her allegedly illegal conduct. The judge admitted that she reviewed the applicable stalking statute and determined that it did not apply to the plaintiff's conduct. Despite that, she repeatedly accused him of stalking her in the media, apparently to counteract his consistent public criticism of her. This Court held that her statements to the press failed the objective

legal reasonableness test because her conduct violated clearly established First Amendment rights of which a reasonable person in her position would have known. She was a judge and admittedly knew she was falsely accusing the plaintiff of conduct that did not meet the stalking statute.

In holding that the general right to be free from retaliation for criticizing the government is clearly established, the district court also relied on *Bloch*, *supra*. However, that broad pronouncement directly contravenes the required showing mandated by our Supreme Court in recent years. While the Court in *Bloch* acknowledged that "for a plaintiff to make a successful §1983 claim, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right,' the Court did not address the clearly established requirement as that has been refined by our Supreme Court. The Court concluded that the defendant sheriff was not entitled to qualified immunity 'because the right to criticize public officials is clearly established,' the Blochs alleged that they suffered embarrassment and humiliation that would chill people of ordinary firmness from continuing to exercise their constitutional rights as a result, and they claimed that the release of the highly personal information was motivated at least in part as a response to the exercise of those rights. *Id*., at 683.

However, that generalized right to criticize public officials was not particularized in any relevant sense so as to put Defendant on notice in the present

context that merely displaying the gun during a remote Zoom meeting in response to requests to stake a position on Second Amendment issues would be constitutionally violative. The *Bloch* Court discussed the First Amendment right in generalities. Perhaps that was a function of what was or was not argued by the defense, or where the decision pre-dated the bulk of our Supreme Court precedent which has admonished that generalized rights do not overcome qualified immunity; rather, constitutional rights must be particularized such that a reasonable official would know, beyond debate, that what he was doing violated clearly established rights.

In *White*, *supra*, the Supreme Court again rejected the position that clearly established law could be defined "at a high level of generality." Instead, the clearly established law must be "particularized" to the facts of the case. Existing precedent must have placed the question confronted by the official *beyond debate*. *Plumhoff*, at 2023. An official cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. *City of Escondido, Cal. v Emmons*, __ U.S. __; 139 S. Ct. 500, 503 (2019), quoting *Kisela v Hughes*, 584 U.S. __; 138 S. Ct. 1148, 1153 (2018). ***Otherwise, as noted earlier, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."***

30

*White*, *supra* at 551-552, emphasis added; *Anderson*, *supra* at 639. A body of relevant case law is usually necessary to clearly establish a particularized right. *City of Escondido*, at 504.

In *Occupy Nashville v Haslam*, 769 F3d 434 (6th Cir. 2014), this Court observed that the level of generality at which the constitutional right in question is defined is of great importance. *Id*., at 443. There, this Court held that protestors did not have a clearly established right under the First Amendment to continuously occupy a plaza on state capitol grounds for an indefinite period of time, and thus state officials who promulgated a curfew and ordered removal of protestors pursuant to that curfew were entitled to qualified immunity from liability in the protestors' §1983 action, even if protestors were engaging in expressive conduct. *Id*.

For the protesters there to claim that they were merely seeking the right to speak in a public forum ignored the actual scope and duration of the protest and expressed the First Amendment issue in unduly abstract terms. *Id*., at 444, citing *Anderson*, 483 US at 639. In adhering to Supreme Court precedent, this Court opined that it does not matter whether the protesters had a First Amendment right to move into a public park and take it over for as long as they are doing something that might be considered expressive. "What matters is that reasonable government officials could, like the State officials here, understand the law very differently. … It was neither 'plainly incompetent,' nor 'beyond debate.'" *Id*., at 445. The State officials

31

defined the right claimed by the protesters as a "24-hour occupation" of the public square, which they argued is not a "right" at all. The protesters, by contrast, argued that the constitutional right at issue was not a right to "occupy" the Plaza, but a "clearly established First Amendment right to be present on the Plaza to air their grievances against the government." This Court concluded that the more specific and accurate framing of the issue was the one provided by the State officials. *Id*., at 443.

This Court observed that the Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Occupy Nashville*, at 443, citing *Plumhoff*, at 2023.

In *Wood v Moss*, 572 U.S. 744; 134 S. Ct. 2056 (2014), the Supreme Court held that the plaintiffs' First Amendment right was not clearly established under the circumstances. In *Wood*, two Secret Service agents established a security perimeter around the President during an unscheduled stop for dinner. The plaintiff argued that the agents bore a First Amendment obligation to ensure that groups with different viewpoints were at comparable locations at all times. The Court disagreed, holding that the agents were entitled to qualified immunity on the claim brought by protesters alleging the agents engaged in viewpoint discrimination when they moved the

protesters away from the open-air patio at which the President was dining, while allowing supporters of the President to remain in their original location. The protesters were within weapons range and had a largely unobstructed view of the President's location, while, in contrast, supporters were at a location where a large, two-story building blocked site of, or weapons access to, the patio the agents endeavored to secure.

In *Reichle v Howards*, 566 U.S. 658, 665, 132 S. Ct. 2088, 2093-94 (2012), the Supreme Court considered qualified immunity in the context of First Amendment speech and an arrest. The arrestee argued that previous cases "settled" the rule that, "'as a general matter[,] the First Amendment prohibits government officials from subjecting an individual to retaliatory actions'" for his speech. This is the same general argument Plaintiff is making here. The Supreme Court again rejected that approach: "But we have previously explained that the right allegedly violated must be established, "'not as a broad general proposition,'" *Brosseau*, *supra* at 198, but in a "particularized" sense so that the "contours" of the right are clear to a reasonable official, *Anderson, supra,* at 640. The right in question was not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause. Qualified immunity applied there because the law was not clearly established in the

situation confronting the officer.[4]

In *Clark*, *supra*, the plaintiffs asserted that the district court erred in dismissing their First Amendment claim arguing they were retaliated against for exercising their right to record the defendant social workers during home visits. The plaintiffs asserted they had a clear First Amendment right to record the home visits, citing to numerous cases from other circuits and one in-circuit district court case that stood for the proposition that there is a constitutional right to film an encounter with a police officer. The plaintiffs reasoned that because social workers have been held to the same standard as police officers when it comes to other constitutional rights, the cases cited were sufficient to demonstrate that the right to film interactions with a social worker was clearly established. This Court disagreed. The plaintiffs had not cited a single case that applied the alleged right to social workers, and the equivalence to police officers in another context did not establish a clear right in the current situation. Assuming such an equivalence in a completely different area of civil rights would "violate our mandate to avoid construing rights too generally." *Id*.,

---

[4] The Supreme Court has since settled the first prong of qualified immunity in that context by concluding that a plaintiff levying a retaliatory arrest claim based on speech protected by the First Amendment must plead and prove the absence of probable cause for the arrest. *Nieves v Bartlett*, 139 S. Ct. 1715, 1721-22 (2019). Where officers had probable cause to make an arrest for disorderly conduct and resisting arrest, the plaintiff could not plead or prove an unlawful arrest in violation of the First Amendment's protection against retaliation for engaging in protected speech.

at 303.

Further, the cases cited by the plaintiffs did not demonstrate that the right to film a social worker during a home visit was clearly established. A single district court opinion (emanating from an entirely different district than where the events at issue took place) was not sufficient to demonstrate that a right was clearly established in this circuit for purposes of qualified immunity. This Court also opined that while it must accept the plaintiff's factual allegations as true at the pleading stage, it need not accept their legal argument that the continuation of the investigation was somehow retaliatory. In sum, the plaintiffs failed to state a plausible First Amendment retaliation claim. *Id.*, at 304.

By parity of reasoning, Plaintiff could not rely on a generalized right to be free from retaliation based on a First Amendment right to criticize public officials. Plaintiff failed to offer a body of relevant case law demonstrating she had a clearly established right to be free from symbolic speech in response to her request that the Commissioners indicate their positions with respect to Second Amendment rights, the sanctuary resolution, and even the "Proud Boys" under the circumstances presented. This is not a situation where Plaintiff was commenting on the County's budget, County roads or construction projects, or hiring or firing certain employees and he held up a gun. Rather, Plaintiff had specifically requested that the Commissioners publicly express their positions on the Second Amendment issues.

This is similar to a board member being pressed to take a position on over-development and the member displays a shovel from his garage during a zoom meeting, signifying that he supported breaking ground.

It would be extraordinary to expect county officials to make determinations on the spot as to the constitutionality of particular conduct that lawyers and judicial officers themselves debate after hours of measured consideration of the law and facts. Such ranges of debate make this an area of law that is not clearly established. Because reasonable mistakes can be made as to the legal constraints on particular conduct, qualified immunity applies if a reasonable official ***could have believed*** that the conduct was lawful in light of clearly established law. *Anderson*, *supra* at 641. This is even more salient here where Defendant retained his own rights to expression under the First Amendment, making the contours of the right alleged even less clear.

Given the facts of this case and the lack of pre-existing precedent that would have clearly foreshadowed the violation of a particularized right, Defendant's Motion to Dismiss should have been granted.

## <u>CONCLUSION AND REQUESTED RELIEF</u>

WHEREFORE, for all of the foregoing reasons, Defendant/Appellant respectfully requests that the district court's denial of the Motion to Dismiss be <u>reversed</u>.

36

Respectfully submitted,

ROSATI, SCHULTZ, JOPPICH
& AMTSBUECHLER PC

s/MARCELYN A. STEPANSKI
Attorney for Defendant/Appellant
27555 Executive Drive, Ste. 250
Farmington Hills, Michigan 48331-3550
(248) 489-4100/Fax: 1726
mstepanski@rsjalaw.com

Dated: April 28, 2021          (P44302)

# <u>CERTIFICATE OF CONFORMITY</u>

Pursuant to FRAP 32(a)(7)(C), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation found at FRAP 32(a)(7)(B). It contains 9,387 words and has been prepared in Microsoft Word, using a proportionally spaced face, Times New Roman, and a 14-point font size.

Respectfully submitted,

ROSATI, SCHULTZ, JOPPICH
& AMTSBUECHLER PC

s/MARCELYN A. STEPANSKI
Attorney for Defendant/Appellant
27555 Executive Drive, Ste. 250
Farmington Hills, Michigan 48331-3550
(248) 489-4100/Fax: 1726
mstepanski@rsjalaw.com
(P44302)

Dated: April 28, 2022

CERTIFICATE OF SERVICE

I certify that on April 28, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Marcelyn A. Stepanski

CASE NO. 22-1015

PATRICIA MACINTOSH,

*Plaintiff/Appellee*,

v.

GRAND TRAVERSE COUNTY COMMISSIONER
RON CLOUS,

*Defendant/Appellant*.

**ADDENDUM
DEFENDANT/APPELLANT'S
DESIGNATION OF RECORD ON APPEAL**

Pursuant to 6th Cir R 30(b), Defendant/Appellant hereby designates the

following district court filings as the pertinent Record on Appeal:

| DESCRIPTION OF ENTRY | DATE FILED | RECORD ENTRY NO. |
|---|---|---|
| Complaint w/exhibits | 4/12/21 | 1, PG ID 1-32 |
| Defendant's Motion to Dismiss w/exhibits | 7/13/21 | 15-16, PG ID 90-173 |
| Defendant's unpublished authority | 7/13/21 | 17, PG ID 174-236 |
| Defendant's exhibits 2 and 7 filed in traditional manner | 7/15/21 | 21 |

| | | |
|---|---|---|
| Plaintiff's Corrected Response to Motion | 8/25/21 | 33, PG ID 345-375 |
| Defendant's Reply to Response | 9/7/21 | 34, PG ID 380-416 |
| Order Denying Motions to Dismiss | 12/7/21 | 39, PG ID 421-422 |
| Motion Hearing Transcript | 12/21/21 | 43, PG ID 433-483 |
| Notice of Appeal | 1/4/22 | 44, PG ID 484-485 |