**Case No. 22-1015**

IN THE

# United States Court of Appeals for the Sixth Circuit

PATRICIA MACINTOSH,

*Plaintiff/Appellee*,

v.

GRAND TRAVERSE COUNTY COMMISSIONER
RON CLOUS,

*Defendant/Appellant*.

On appeal from the United States District Court for the
Western District of Michigan, Southern Division, District
Court No. 21-cv-00309, Hon. Mag. Judge Phillip J. Green.

ROSATI, SCHULTZ, JOPPICH
& AMTSBUECHLER PC
MARCELYN A. STEPANSKI (P44302)
Attorneys for Defendant/Appellant
 County Commissioner Clous
27555 Executive Drive, Ste. 250
Farmington Hills, Michigan 48331-3550
(248) 489-4100/Fax: 1726
mstepanski@rsjalaw.com

## REPLY BRIEF OF DEFENDANT/APPELLANT
## GRAND TRAVERSE COUNTY COMMISSIONER  RON CLOUS

# INDEX OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987) ........................11

*Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074 (2011) .............................11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).......5

*Avant v. Doke*, No. 21-7031, 2022 WL 2255699 (10th Cir. June 23, 2022) ............12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .....................................................................................................................5

*Benison v. Ross*, 765 F.3d 649, 665 (6th Cir. 2014) ..............................................23

*Briner v. City of Ontario*, 370 Fed. App'x 682, 707 n26 (6th Cir. 2010) ................23

*Cunningham v. Blackwell*, 41 F.4th 530 (6th Cir. 2022) ..........................................13

*Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223 (10th Cir. 2022)........................5

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 n2 (6th Cir. 2010) ..............23

*Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010) ...........................24

*Knopf v. Williams*, 884 F.3d 939, 943-944 (10th Cir. 2018) .............................. 10-12

*Mirabella v. Villard*, 853 F.3d 641, 652–53 (3rd Cir. 2017) .............................. 15-17

*Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)................................................ 10-11, 19

*Myers v. City of Centerville, Ohio*, 41 F4th 746 (6th Cir. 2022)............................2-4

*Perkins v. Twp. of Clayton*, 411 Fed App'x 810 (6th Cir. 2011) .............................24

*Plumhoff v. Rickard*, — U.S. —, 134 S.Ct. 2012, 2023 (2014) .............................11

*Poppy v. City of Willoughby Hills*, 96 Fed App'x 292, 296 (6th Cir. 2004).............25

*Reichle v. Howards*, 132 S.Ct. 2088, 2094 (2012) ............................................. 16-17

*Rudd v City of Norton Shores*, 977 F3d 503 (6th Cir. 2020) .............................. 22-23

*Scott v Harris*, 550 US 372, 380 (2007) ....................................................................1

*Stockdale v. Helper*, 979 F.3d 498, 507 (6th Cir. 2020), *cert. denied*, 142 S. Ct. 90, 211 L. Ed. 2d 21 (2021) .......................................................................................15

*Swanson v. Griffin*, No. 21-2034, 2022 WL 570079, at *1 (10th Cir. 2022) ..... 17-22

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) .........................4

*White v. Pauly*, 137 S.Ct. 548, 551 (2017) ............................................ 10-11, 13, 19

This is not a case where Commissioner Clous randomly displayed a weapon during a board meeting. Plaintiff ignores the indisputable fact that she implored the Commissioners to make "some sort of a public statement" about the issues addressed during public comment at the January 20, 2021 meeting. As demonstrated by a verbatim recitation *infra*, Plaintiff took issue with the Second Amendment sanctuary resolution passed by the Board the previous year and her perception of a message it might have sent to the Proud Boys. She was specifically talking about gun ownership and gun rights when Clous momentarily displayed his own gun while attending the zoom meeting from his home.[1] The video objectively demonstrates what occurred. *Scott v Harris*, 550 US 372, 380 (2007). Where our Supreme Court holds that such a video prevails over contradictory sworn testimony, it certainly prevails over unsworn allegations and argument.

Plaintiff argues that the lower court properly denied Defendant's motion because it is inappropriate to dismiss on the basis of qualified immunity at this stage. However, in the context of a First Amendment retaliation claim, this Court recently reaffirmed the opposite:

> We held, long before *Buddenberg* and *Wesley*, that district courts have "a duty to address" qualified immunity when it is "properly raised prior to discovery." *Summers*, 368 F.3d at 886; *see also Skousen*, 305 F.3d at 527 ("[T]he

---

[1] Copies of the video have been provided to this Court. For ease of access, the video can also be found at: https://www.tacm.tv/watchgovtv.asp?SDBFid=13214.

district court was required to determine – prior to permitting further discovery – whether [the plaintiff's] complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established[.]"). After all, qualified immunity shields government defendants not merely from liability, but also from litigation and discovery, because "[i]nquiries of this kind can be peculiarly disruptive of effective government." *Harlow*, 457 U.S. at 817, 102 S.Ct. 2727; *see also Anderson v. Creighton*, 483 U.S. 635, 646 n.6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (re-affirming that qualified immunity protects officials from "broad-ranging discovery" (cleaned up)). *Buddenberg* and *Wesley* could not have disturbed that long-settled precept, *see, e.g., Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985), so they could not (and do not) give license to deny qualified immunity, without a reasoned opinion, whenever the defense is raised in a Rule 12 motion.

*Myers v. City of Centerville, Ohio*, 41 F4th 746 (6th Cir. 2022). This Court elaborated further on applying qualified immunity at the pleadings stage where the inquiry turns on facts to be adduced at discovery - a concern which is not at issue here because the incident was captured on video. The *Myers* Court observed:

However, as we recently explained in *Crawford*, *Wesley* does have a point: analyzing the *second* prong of qualified immunity—whether the alleged constitutional violation is clearly established "is sometimes difficult" on the pleadings, since that "inquiry may turn on case-specific details that must be fleshed out in discovery." *Crawford*, 15 F.4th at 765 (collecting cases); *see also Siefert v. Hamilton County*, 951 F.3d 753, 761 (6th Cir.) ("Without more than the complaint to go on, the court 'cannot fairly tell whether a [right] is "obvious" or "squarely governed" [and thus clearly established] by precedent,' making qualified immunity inappropriate." (quoting *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019))), *cert.*

*denied sub nom. Hamilton Cnty. Job & Fam. Servs. v. Siefert*, — U.S. —, 141 S. Ct. 896, 208 L.Ed.2d 453 (2020). That, *Crawford* explained, is what *Wesley*'s "at best imprecise" language meant to convey. *Crawford*, 15 F.4th at 763 ("[M]ost statements of this proposition are careful to explain that its application rests on qualified immunity's clearly established prong."); *id.* at 765.

Still, that "is only a 'general preference,' not an absolute one." *Siefert*, 951 F.3d at 761 (quoting *Guertin*, 912 F.3d at 917); *Crawford*, 15 F.4th at 765 (explaining that "the inquiry is nuanced" and not reducible to a hard-and-fast rule). In some cases, the clearly established prong may be determined on the pleadings.

*Myers*, at 758-759. Here, Defendant raised both prongs of qualified immunity, making Plaintiff's complaint amenable to dismissal under either prong:

More importantly, *Crawford* made crystal clear that that general preference does not at all cover qualified immunity's *first* prong—whether the complaint plausibly alleged a constitutional violation. 15 F.4th at 764–65 (discussing *Iqbal*, 556 U.S. at 687, 129 S.Ct. 1937, which reversed the denial of qualified immunity raised in a Rule 12(b)(6) motion after concluding that the plaintiff failed to plausibly plead a constitutional violation). Put differently, if the complaint fails to allege facts plausibly showing the violation of a constitutional right (regardless of whether that right was clearly established), granting qualified immunity is appropriate on the pleadings. *Id.*; *see Siefert*, 951 F.3d at 762. The assertion of qualified immunity, by itself, does not change that.

**So, in this case, as in every other case in which a defendant timely raises qualified immunity, the district court was required to determine whether Myers plausibly alleged a constitutional violation and, if so, whether that right was clearly established.** *See Skousen*, 305 F.3d at 527.

*Myers*, at 759, emphasis added.[2] As previously briefed, the Supreme Court has *repeatedly* stressed that qualified immunity should be decided at the earliest opportunity.

Next, Plaintiff conflates the proper standard of review by arguing that her "allegations are plausible." Appellee Brief, p. 11. The question is not whether the allegations are plausible but whether the allegations state a plausible claim:

> We use the *Iqbal/Twombly* standard to determine whether Plaintiff stated a plausible constitutional violation. *Brown*, 662 F.3d at 1162–63. Thus, we take Plaintiff's well-pleaded facts as true, view them in the light most favorable to him, and draw all reasonable inferences from the facts in his favor. Id. at 1162. A plausible claim must include facts from which we may reasonably infer the defendant's liability. Id. at 1163 (citation omitted). Plaintiff must nudge the claims across the line from conceivable or speculative to plausible. Id. (citation omitted). Allegations that are " 'merely consistent with' a defendant's liability" stop short of that line. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). And labels, conclusions, formulaic recitations of elements, and naked assertions will not

---

[2] In *Myers*, the plaintiff claimed that the defendants violated the First Amendment by retaliating against him for writing a letter. This Court recounted the requisite elements: (1) the plaintiff engaged in protected conduct [i.e., constitutionally protected speech]; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) ... the adverse action was motivated at least in part by the plaintiff's protected conduct, citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The defendants challenged only the first element, arguing that the letter was not protected speech; thus, the Court addressed only that element.

suffice. Id.

> An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Conclusory allegations are "not entitled to the assumption of truth." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). **We disregard conclusory statements and look to the remaining factual allegations to determine whether a plaintiff stated a plausible claim**. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). **We must draw on our experience and common sense in evaluating the plausibility of a claim**. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

*Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223 (10th Cir. 2022), emphasis added.

Under the circumstances presented, the complaint did not allege a plausible constitutional claim, nor has Plaintiff carried her burden to show that her First Amendment right to be free from retaliation was clearly established *in a particularized sense*. Plaintiff has not shown that every reasonable official in Clous's position would have known – beyond debate – that he violated clearly established law when he engaged in symbolic speech by momentarily displaying a gun in response to Plaintiff's urging to make a public statement about the Second Amendment sanctuary resolution and a perceived message it might have sent to the Proud Boys when she was specifically talking about gun ownership and rights at the pertinent time.

Prior to Plaintiff's public comment, Kate Dahlstrom spoke during the zoom

5

meeting and read an email that she had sent to Commissioners regarding the Proud

Boys and the Second Amendment gun sanctuary resolution the Board had passed a

year earlier. As reflected by the recording of the meeting, Ms. Dahlstrom stated in

pertinent part:

> A Commissioner invited the Proud Boys to speak for 20 minutes at a March 2020 Bd of Commissioners meeting when a majority of the Commissioners passed an ill advised and much opposed gun sanctuary designation for our county. Remember even at that time it was known that the FBI designated them as extremists. I write to request that all commissioners confirm they are not members of this hate, extremist, white supremacist group, or any similar group, and **that they will vote to revoke this ill advised gun sanctuary designation.** And also that Rob Hentschel would apologize for inviting or allowing anyone, especially a hate extremist group, to consume 20 minutes of everyone's time when the normal limit is three minutes. **Why do Commissioners continue to add disruptive, ill advised, non-relevant, resolutions to their agenda that waste large amounts of time**? Is this to justify giving themselves extra salary and benefits? No more, we've had enough. Katy Dahlstrom.

> I only received one reply, from Commissioner Coffia, that said she was not a member of any such hate group. I furthermore want to uh uh voice my opinion against this pandemic resolution. I think uh one thing no one has mentioned is the impact on our hospital systems and our healthcare workers. If we had done some of these things that you're suggesting now, and it still could happen because there's a highly contagious variant now circulating, our medical workers and our hospital systems would be totally overwhelmed, our morgue couldn't keep up, you've seen the refrigerated van, ok, we don't need that. We're almost at the end here. The Governor has just issued a $50 million grant program. Time.

(R.16, Exhibit 2, Meeting Video.)

Commissioner Hentschel then spoke:

> I'm going to take a brief pause right now because of the insinuation of racism on this board and because I take that very seriously. If any commissioner would like to denounce any particular hate group, that's fine. I did reply to Kate and I did ask her who told her that we gave a 20 minute time slot to the Proud Boys because we did not. I asked her if she even watched the meeting. She did not reply to that. However, I'm not a member of Proud Boys, I did not give a Proud Boy 20 minutes of time in the commissioners meeting. But I do know a few Proud Boys, I've met a few. I've met black Proud Boys. I've met multi-racial Puerto Rican Proud Boys, and they informed me they also have gay Proud Boys. I don't see how that's a hate group. And I don't really appreciate this forum being used to spread misinformation about me or groups. You can do that in your magazines and your editorials, ok?

> Commissioner Huntley:

> Is it appropriate to be commenting on public comment in this manner? I'll leave it at that.

> Commissioner Hentschel:

> Well Commissioner Huntley, if somebody came on here and called you a racist or insinuated that you are associated with a racist group, I would invite you to defend yourself in any way you see fit. And I would give that right to you, or a Proud Boy as I did last year or in 2019 when that meeting was, when somebody's coming on and spreading lies about you, I invite you to defend yourself. With that we'll move back on to public comment.

Plaintiff then commented as follows:

> This is Kelly MacIntosh in East Bay Township.

Commissioner Hentschel:

Good morning, Kelly.

Plaintiff:

Good morning. After your response to Kate Dahlstrom, I guess I will not read what I had planned on reading because you will cut me off. Um, there are two things I guess I would like to say. As dark a situation our country is in right now, I think this is a really odd time that you are going to be pushing for extra benefits for part-time employees of the county. I think there are much more important things to be working on. I did go back and watch the March 4th BoC meeting when Randy Bishop was invited to speak. I'm not sure if it was exactly 20 minutes but it was certainly alot longer than many of the others of us have ever been able to speak. And I'm wondering if you have any afterthoughts um I don't know why you invited him to speak. I'm wondering if you realized that when he asked for, uh how is the way he phrased it, symbolic message to be sent out to the community **to make our county a sanctuary for Second Amendment** activists, did you intend to give him permission to have groups like the Proud Boys standing in the balcony of the capitol and threatening the state legislature with their assault rifles? You actually allowed the weapons to be in the um BoC chambers when he was speaking. And I guess was the symbolic message that he was asking you to give to the state uh subtle encouragement for them to threaten Whitmer's life? I mean it's really hard to tell the difference between the Proud Boys and the message they want through our state, how that's different from what's happened in Washington. I mean welcoming such a group and **having that message go out has changed the environment in northern Michigan from a hunting culture to that of a gun culture.** And I just am really concerned, I hope that you, since you are so defensive against Kate Dahlstrom's comments, **will you please make some sort of a public statement for the community** that you do not accept the behaviors, I mean

you can say that we don't have problem Proud Boys around our area, but there are obviously problem Proud Boys around the country causing problems and for them to have been invited to speak um you know, **I'm not a gun owner but I can certainly appreciate peoples wanting to have their gun rights [at this point Commissioner Clous momentarily displays the side view of his rifle] protected but I would think everybody in our country [the rifle is moved off screen]** would have to realize that permission has been given to these activist groups to do more with their guns than go out hunting and I really hope that you as. Time.

Commissioner Hentschel:

Thanks Kelly. I do appreciate your comments. Just one word of clarification. Randy Bishop's not a Proud Boy. I think that might be where Ms. Dahlstrom was confused. But we'll move on in public comment. Happy to talk to you more about this later.

(R.16, Exhibit 2, Meeting Video.)

Plaintiff admits in her Appellee Brief, as well as her Complaint, that she observed Clous display the gun before she concluded her comments. (Appellee Brief, p. 4, quoting her Complaint at ¶31.) Although she purports she was "taken aback," the recording demonstrates that Plaintiff did not miss a beat. She continued seamlessly with her remarks. (R.16, Exhibit 2, Meeting Video.)

Qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right,

and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Knopf v. Williams*, 884 F.3d 939, 943-944 (10th Cir. 2018). "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Id*., at 944.

To be clearly established, " 'existing precedent must have placed the statutory or constitutional question beyond debate.' " *White v. Pauly*, — U.S. —, 137 S.Ct. 548, 551 (2017), quoting *Mullenix v. Luna*, — U.S.—, 136 S.Ct. 305, 308 (2015). Although there need not be a case directly on point, an official 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it....'" *Knopf*, at 944, quoting *Plumhoff v. Rickard*, — U.S. —, 134 S.Ct. 2012, 2023 (2014).

Contrary to what Plaintiff advocates, "Courts must **not** define 'clearly established law at a high level of generality.'" *Knopf*, at 944, quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074 (2011), emphasis added. **Instead, "the clearly established law must be 'particularized' to the facts of the case."** *White*, *supra* at 552, quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987), emphasis added. **"The dispositive question is whether the violative nature of *particular* conduct is clearly established."** *Mullenix*, *supra* at 308. **"Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity into a rule of**

**virtually unqualified liability simply by alleging violation of extremely abstract rights,'** like 'plaintiff has a clearly established right to be free from retaliation for engaging in protected speech.' *White*, at 552. **A plaintiff must meet her burden to show the law was clearly established with respect to *each particular element***. *See Knopf*, at 949; *Avant v. Doke*, No. 21-7031, 2022 WL 2255699, at *5 (10th Cir. June 23, 2022). In *Knopf*, the Court of Appeals reversed a denial of qualified immunity for the mayor where it was not clear that the city planner's email constituted protected speech. Under Plaintiff's theory, immunity would have been inappropriate because of the general precept that retaliation for engaging in protected speech violates the First Amendment, without delving into whether it was clearly established that the type of speech alleged was protected.

Here, the Court must consider each element through the qualified immunity crucible and determine whether it was clearly established that Clous was forbidden from momentarily displaying his gun *in response to Plaintiff's request* that the Commissioners make a public statement about the Second Amendment sanctuary resolution, its "message" to the Proud Boys, and gun ownership/rights – during a remote meeting while in his own home. This is not a situation where Clous randomly displayed a gun. It was in response to the discussion regarding: the Second Amendment sanctuary resolution, its impact on the Proud Boys - as perceived by Plaintiff, changing the environment of northern Michigan from that of a hunting

culture to a gun culture – again as perceived by Plaintiff, and gun rights and ownership.  Plaintiff does not have to produce a case on all fours, but as noted above, "the clearly established law must be 'particularized' to the facts of the case." *White*, *supra*. The violative nature of *particular conduct* in the circumstances must be clearly established, beyond debate. Otherwise, immunity in the First Amendment context means nothing.

In *Cunningham v. Blackwell*, 41 F.4th 530 (6th Cir. 2022), the plaintiff filed a First Amendment claim for retaliation against university administrators. In applying qualified immunity, this Circuit opined:

> All of the federal claims against the administrators of this public university are subject to the twin pillars of a qualified immunity defense: (1) that the administrators violated the professors' constitutional rights and (2) that they violated clearly established law in doing so. *Ortega v. U.S. Immigr. & Customs Enf't*, 737 F.3d 435, 438 (6th Cir. 2013). Absent a "beyond debate" showing that the administrators acted unconstitutionally, they receive immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). We may resolve a qualified immunity defense under the first or second prong, as there is no "rigid order of battle." *Pearson v. Callahan*, 555 U.S. 223, 234, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quotation omitted). In today's case, the due process and free speech claims both fail to satisfy the second prong, the violation of clearly established rights.

*Id*., at 536. Specifically, the Court considered the lack of clarity for purposes of immunity as to the *particular* circumstances presented:

> Shehata's retaliation claim asserts that his contract was not

renewed because he did not comply with the administrators' demand to admit that he "intentionally altered patient notes which resulted in false documentation being submitted to third-party payors." SR.1-2 at 55. But this claim falters from the start. His refusal did not indisputably qualify as protected activity.

No clearly established law supports the claim. **The courts of appeals have arrived at different answers to the question of whether the First Amendment allows an employer to require an employee to sign his name to a statement he believes is false as part of his job duties.** The Second Circuit has taken the position that the First Amendment can step in. *Jackler v. Byrne*, 658 F.3d 225, 229, 231–32 (2d Cir. 2011) (holding that a former police officer's refusal to submit a report with which he disagrees qualifies as protected activity for First Amendment purposes). The D.C. and Seventh Circuits have gone the other way. *Bowie v. Maddox*, 642 F.3d 1122, 1127, 1134 (D.C. Cir. 2011) (holding that a former employee did not enjoy First Amendment protection when he refused to sign an affidavit containing "misstatements of fact" and "language that would convey impressions that he would not agree with" about a former colleague (quotation omitted)); *Davis v. City of Chicago*, 889 F.3d 842, 846 (7th Cir. 2018) (holding that the First Amendment did not protect an employee's right to refuse to publish reports reaching conclusions with which he disagreed). Our Court to date has stayed out of the fray. *Kingsley v. Brundige*, 513 F. App'x 492, 499 (6th Cir. 2013).

This collective uncertainty on prong one of qualified immunity creates certainty on prong two. If the circuits disagree and if our circuit has yet to take a stand, the law remains unsettled. *Cagle v. Gilley*, 957 F.2d 1347, 1349 (6th Cir. 1992). That reality precludes Shehata from establishing he clearly engaged in protected activity.

*Cunningham*, *supra* at 543, emphasis added.

In *Stockdale v. Helper*, 979 F.3d 498, 507 (6th Cir. 2020), *cert. denied*, 142 S.

13

Ct. 90, 211 L. Ed. 2d 21 (2021), our Circuit held that precipitating the firing of private employees did not clearly establish that doing the same as to public employees would offend the Constitution, thereby addressing the particular facts of the case before it and rebuffing the generalized right approach.

In *Mirabella v. Villard*, 853 F.3d 641, 652–53 (3rd Cir. 2017), the plaintiffs petitioned their local government for assistance in a dispute with their neighbors over public wetlands owned by the township, and, at the same time, threatened the local government with litigation as owners of the property. A local official responded, via email, by barring the plaintiffs from communicating directly with any members of the local government, other than its counsel. Local officials also threatened to move for sanctions against them for frivolous litigation if they sued. The plaintiffs then filed an action alleging that the government officials violated their First Amendment rights by retaliating against them for exercising their First Amendment rights and petitioning the government for redress of grievances. The district court denied the defendants' motions to dismiss and denied qualified immunity. The government officials appealed on qualified immunity grounds. The Third Circuit concluded that the plaintiffs adequately alleged both a retaliation claim and a violation of their right to petition, but nonetheless precluded their claims where the rights were not clearly established for the purpose of qualified immunity. In considering the second prong of qualified immunity, the Court heeded Supreme

Court precedent and stated, "[i]n this analysis we are mindful that we must not 'define clearly established law at a high level of generality.' More specifically, the Supreme Court has given us guidance on defining a right in the First Amendment retaliation context. In *Reichle v. Howards*, the Supreme Court clarified that it is too broad to define the right as the "right to be free from retaliation for one's speech." 132 S.Ct. 2088, 2094 (2012). Conversely, *Reichle* held that it is proper to define a right as the 'right to be free from a retaliatory arrest that is otherwise supported by probable cause.'" *Mirabella*, at 653, cleaned up.

As in *Reichle*, the Court noted that the disputed issue in *Mirabella* was "whether it was clearly established that the defendant's act was retaliatory. Paralleling *Reichle*, we define the right at issue as the right to be free from a retaliatory restriction on communication with one's government, when the plaintiff has threatened or engaged in litigation against the government." *Id*.

The Court held "[t]his right was <u>not</u> clearly established when Walsh sent the 'no contact' email. The Mirabellas have identified neither Supreme Court precedent nor a 'robust consensus of cases of persuasive authority.' Thus, Walsh is entitled to qualified immunity on the Mirabellas' First Amendment retaliation claim." *Id*.

*Mirabella* demonstrates the type of particularized assessment required by the Supreme Court and advanced here. Contrary to Plaintiff's assertion, the inquiry is not simply whether Plaintiff has a general right to be free from retaliation for

criticizing the government, but rather whether Plaintiff has a right to be free from symbolic speech by a government official via the momentary display of a weapon when Plaintiff asked for public statement from the officials as to a Second Amendment gun sanctuary resolution and its impact on the Proud Boys while she specifically commented on gun ownership and rights during a remote zoom meeting. All of these particular facts and nuances are material to the analysis. Given the context, Defendant did not randomly pull out a gun, nor did he point it in a threatening manner. Rather, he displayed it in response to Plaintiff's request that the Commissioners make a public statement.

A recent Tenth Circuit case also is instructive. In *Swanson v. Griffin*, No. 21-2034, 2022 WL 570079, at \*1 (10th Cir. 2022), a county commissioner blocked the plaintiff from his Facebook profile after the plaintiff posted comments critical of the defendant's service as a county commissioner. The plaintiff commenced an action alleging the defendant's Facebook profile was a public forum and he engaged in viewpoint discrimination, in violation of the First Amendment. The defendant moved for dismissal raising a qualified immunity defense. The district court denied the motion, relying on out-of-circuit authority to conclude the law clearly established that (1) social media platforms are entitled to the same First Amendment protection as other public speech platforms and (2) a government official censoring speech violates the speaker's First Amendment rights. The Court of Appeals reversed,

observing that the Supreme Court has repeatedly instructed lower courts not to define rights at a high level of generality when considering a qualified immunity defense. Furthermore, two of the three out-of-circuit cases relied on by the plaintiff were off-point, and a single out-of-circuit case was not capable of clearly establishing a proposition of law. The Court stated:

> While "the Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality,' " it has also explained that " 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.' " *Quinn*, 780 F.3d at 1005 (first quoting *al-Kidd*, 563 U.S. at 742; and then quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). **But more recent Supreme Court case law remarks that "the clearly established law must be 'particularized' to the facts of the case."** *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). **And plaintiffs may not identify their claim through "extremely abstract rights" because this would "convert the rule of qualified immunity into a rule of virtually unqualified liability."** *Id.* (quoting *Anderson*, 483 U.S. at 639). **Ultimately, we must assess whether "existing precedent [has] placed the statutory or constitutional question beyond debate."** *Id.* at 551 (quoting *Mullenix*, 577 U.S. at 12).

*Swanson*, at *2-3, emphasis added. In applying qualified immunity, the Court continued:

> We conclude Mr. Swanson did not carry his burden on the clearly established prong of the qualified immunity analysis. While Mr. Swanson has identified some generally applicable rules of law, Mr. Swanson has not identified a Supreme Court or Tenth Circuit case addressing a set of facts sufficiently similar to those

17

> surrounding Mr. Griffin's Facebook profile. Furthermore, although Mr. Swanson attempts to rely on out-of-circuit authority to demonstrate that the right he asserts is clearly established under the weight of authority approach, only one of the three out-of-circuit decisions is potentially on-point. But a plaintiff's identification of a single out-of-circuit case is not sufficient to satisfy the weight of authority approach.

*Id*. While the Court of Appeals recognized that generally, the government may not regulate speech based on its substantive content or the message it conveys., nor may it discriminate against speech on the basis of its viewpoint, the plaintiff critically failed to identify law clearly establishing when an individual government official's social media profile becomes a public forum:

> The Supreme Court has not addressed this question. See *Davison v. Randall*, 912 F.3d 666, 682 (4th Cir. 2019) ("[T]he Supreme Court nor any Circuit has squarely addressed whether, and in what circumstances, a governmental social media page ... constitutes a public forum[.]"); see also *Biden v. Knight First Amendment Inst. at Columbia Univ.*, 141 S. Ct. 1220, 1221 (2021) (Thomas, J., concurring) (observing that "applying old doctrines to new digital platforms is rarely straightforward" and suggesting that First Amendment protection might not extend to social media pages where a private company controls the platform and could suspend or ban any user); *Morgan v. Bevin*, 298 F. Supp. 3d 1003, 1009 (E.D. Ky. 2018) ("This [c]ourt is mindful that it is one of the first to wrestle with the intersections of the application of free speech to developing technology and First Amendment rights of access to public officials using privately-owned channels of communication. It is a case of first impression in the Sixth Circuit and, if appealed, would be a case of first impression to the Supreme Court of the United States as well."). Nor has Mr. Swanson identified any decision

18

> by this court addressing this question. Rather, Mr. Swanson relies upon three out-of-circuit cases: (1) *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019); (2) *Robinson v. Hunt Cnty.*, 921 F.3d 440 (5th Cir. 2019); and (3) *Knight First Amendment Institute at Columbia University v. Trump*, 928 F.3d 226 (2d Cir. 2019). We discuss each in turn.

*Swanson*., at \*3. Demonstrating the factual particularization required, the Court of

Appeals observed:

> In *Davison*, Phyllis Randall, the chair of a county board of supervisors blocked the plaintiff from a Facebook page after the plaintiff posted a series of comments critical of Ms. Randall and the Board and suggested that Board members were operating under a conflict of interest. 912 F.3d at 675–76. The Fourth Circuit held Ms. Randall's action violated the First Amendment because it amounted to an effort "to suppress speech critical of [her] conduct of official duties or fitness for public office." *Id.* at 680 (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 524 (4th Cir. 2003)). On the surface, this case appears to support Mr. Swanson's position. But a closer review demonstrates that the facts of *Davison* are sufficiently distinguishable from those alleged by Mr. Swanson.
>
> The Fourth Circuit concluded Ms. Randall's Facebook page was a public forum based on when she created the page, how she labeled the page, and how she used the page. *Id.* at 680–81. On the former two considerations, Ms. Randall created the page the day before she was sworn in as Chair of the Board, titling the page "Chair Phyllis J. Randall" and designating the page as a "governmental official" page. *Id.* at 673. Thus, while Mr. Swanson's complaint alleges Mr. Griffin used his Facebook profile in a manner similar to Ms. Randall, it is devoid of allegations that Mr. Griffin created and titled his Facebook profile in a manner similar to the facts at issue in *Davison*.
>
> Turning to *Robinson*, there the plaintiff raised a First

Amendment claim after being blocked from accessing and commenting on a Facebook page. 921 F.3d at 445. The Fifth Circuit held that "[o]fficial censorship based on a state actor's subjective judgment that the content or protected speech is offensive or inappropriate is viewpoint discrimination." *Id.* at 447. But this holding was in the context of a Facebook page maintained by and titled under the name of the Hunt County Sheriff's Office. *Id.* at 445. This fact makes *Robinson* entirely distinguishable from the alleged facts underlying Mr. Griffin's creation and maintenance of his Facebook profile because the Hunt County Sheriff's Office, who created the social media forum, is a government entity rather than a private individual who also serves as a government official. Furthermore, where the Hunt County Sheriff's Office never contested whether its Facebook page was a public forum, the Fifth Circuit did not need to decide whether or when a social media account can become a public forum. *Id.* at 448. Thus, *Robinson* does not help clearly establish the missing aspect of Mr. Swanson's argument against qualified immunity.

Finally, Mr. Swanson relies upon the Second Circuit's decision in *Knight First Amendment Institute*. We need not analyze whether this decision is on-point with the facts alleged in Mr. Swanson's complaint. This is because a single out-of-circuit case does not satisfy the weight of authority approach for demonstrating the law is clearly established. *See Christensen*, 554 F.3d at 1278; *see also Routt*, 835 F. App'x at 385; *Parkhurst*, 339 F. App'x at 861. Accordingly, even assuming the Second Circuit decision is on-point, Mr. Swanson has not carried his burden on the clearly established prong of the qualified immunity analysis.

*Id.*, at 4-5. Where none of the proffered cases clearly established the right at issue

such that a reasonable official would know, beyond debate, that his or her conduct

was violative, the Tenth Circuit reversed the denial of the defendant's motion to

20

dismiss based upon qualified immunity.

In attempting to carry her burden of producing the required clearly established case law, Plaintiff relies on generalized pronouncements and inapplicable factual scenarios. Indeed, in citing to *Rudd v City of Norton Shores*, 977 F3d 503 (6th Cir. 2020) and collecting cases, Plaintiff asserts that "[i]n all those cases, like here, the defense no doubt claimed that there was no way a 'reasonable' official could know the retaliatory conduct was unconstitutional," implying that qualified immunity must have been defeated in those cases. However, Plaintiff is mistaken where most of the cases never even considered qualified immunity. The *Rudd* Court expressly stated:

> We conclude with some loose ends. **None of the defendants have invoked a qualified-immunity defense on appeal, so we need not consider whether their alleged conduct violated a clearly established constitutional right at this stage.**

*Rudd*, at 520.

The same can be said for the cases cited within *Rudd*. In *Briner v. City of Ontario*, 370 Fed. App'x 682, 707 n26 (6th Cir. 2010), it was noted that the City defendants raised qualified immunity in their appeal brief but had *not* presented the issue to the district court. As such, this Court declined to consider it, indicating that the defendants could raise it on remand to the district court. Likewise, in *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 n2 (6th Cir. 2010), the defendants attempted to raise two additional issues on appeal, one being qualified immunity.

21

However, because the district court did not reach the issue, this Court declined to decide it on appeal. In *Benison v. Ross*, 765 F.3d 649, 665 (6th Cir. 2014), the sole remaining individual defendant was sued in his *official* capacity, rendering qualified immunity inapplicable. *Bloch* and *Barrett* were previously addressed and lack the requisite particularization or applicability required by our Supreme Court.

That leaves only *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010). There, the district court held that a reasonable city official would have known that *shutting down or threatening to shut down a person's private business* in retaliation for engaging in protected speech ran afoul of the constitution. The defendant did not challenge that holding on appeal but instead challenged whether the plaintiff's oral petition had the same protection as a written grievance for purposes of protected activity. The issues raised here were not addressed on appeal in *Holzemer*, and the cases are vastly distinct in terms of the alleged adverse action – shutting down the plaintiff's private business (and other actions) versus momentarily displaying a gun in response to a request to make a public statement on a challenged Second Amendment gun sanctuary resolution and its purported impact on the Proud Boys. *See also*, *Perkins v. Twp. of Clayton*, 411 Fed App'x 810 (6th Cir. 2011) (township's actions in initiating censure hearing, passing resolutions to pursue mandamus action, and passing resolutions to pursue contempt motion against township's elected treasurer, who spoke with press regarding alleged improprieties

in township's government, did not rise to level of adverse action necessary to sustain First Amendment retaliation claim; although proceedings township used to criticize treasurer caused her economic harm and emotional hardship, they would not have dissuaded public official of ordinary firmness from exercising his or her First Amendment rights); *Poppy v. City of Willoughby Hills*, 96 Fed App'x 292, 296 (6th Cir. 2004) (mayor's rude gesture of "giving the finger" and commenting "up yours" were isolated incidents of childishness and did not amount to cognizable adverse actions).

In considering the Supreme Court's mandate in applying qualified immunity and the examples provided, not only has Plaintiff failed to sufficiently allege adverse action that would deter a person of ordinary firmness from engaging in protected speech given the context of what occurred here, but she failed to carry her burden to provide pre-existing case law clearly establishing the particular right at issue such that any reasonable official in Clous's position would have known, beyond debate, that his conduct in response to Plaintiff's request was constitutionally violative. As with many other elected officials, the remedy is not a federal case, but rather the election box. Qualified immunity applies, thereby warranting reversal.

## CONCLUSION AND REQUESTED RELIEF

WHEREFORE, for all of the foregoing reasons, Defendant/Appellant respectfully requests that the lower court's denial of qualified immunity be <u>reversed</u>.

Respectfully submitted,

ROSATI, SCHULTZ, JOPPICH
& AMTSBUECHLER PC

s/MARCELYN A. STEPANSKI
Attorney for Defendant/Appellant
27555 Executive Drive, Ste. 250
Farmington Hills, Michigan 48331-3550
(248) 489-4100/Fax: 1726
mstepanski@rsjalaw.com
Dated: August 22, 2022          (P44302)

## <u>CERTIFICATE OF CONFORMITY</u>

Pursuant to FRAP 32(a)(7)(C), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation found at FRAP 32(a)(7)(B). It contains 6,357 words and has been prepared in Microsoft Word, using a proportionally spaced face, Times New Roman, and a 14-point font size.

Respectfully submitted,

ROSATI, SCHULTZ, JOPPICH
& AMTSBUECHLER PC

s/MARCELYN A. STEPANSKI
Attorney for Defendant/Appellant
27555 Executive Drive, Ste. 250
Farmington Hills, Michigan 48331-3550
(248) 489-4100/Fax: 1726
mstepanski@rsjalaw.com
(P44302)

Dated: August 22, 2022

CERTIFICATE OF SERVICE

I certify that on August 22, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Marcelyn A. Stepanski